IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARK S. MUSZYNSKI,

Plaintiff, No. CIV S-04-0082 DFL GGH P

vs.

D.L. RUNNELS, et al.,

Defendants. FINDINGS AND RECOMMENDATIONS

______________________________/

Introduction

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with an action filed pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' motion to dismiss, filed on October 11, 2005, to which plaintiff filed an opposition.

Second Amended Complaint

This action proceeds on a second amended complaint,[1] filed in this court on January 31, 2005,[2] against defendant High Desert State Prison (HDSP) Warden D. L. Runnels

[1] The original complaint and first amended complaint were dismissed with leave to amend. See Orders, filed on May 6, 2004, and November 23, 2004, respectively.

[2] Although the court's docket entry indicates that this action was filed on February 1, 2005, the document itself is file-stamped January 31, 2005, by the Clerk's Office. (Of course, application of the mailbox rule indicates January 27, 2005, as the filing date by plaintiff's

and HDSP Facility B Captain J. Briddle. Plaintiff received seven CDC 115 Serious Rules Violation Reports (RVR) from March, 2001, through May, 2002, for refusing to comply with Cal. Penal Code § 296.[3] In addition to losing 60 days for each of good time credit, for a total of 14 months, and having his behavior points increased from 69 to 105, insuring six more years at a maximum security facility, plaintiff was stripped of his work group/privilege group A1/A status and placed on C/C status, earning no credits, and confined to his cell for 24 hours a day specifically by defendant Briddle of the Facility B Unit Classification Committee (UCC). Plaintiff put in writing that he would comply with Cal. Penal Code § 296, once his conviction became final (following his appeal). Second Amended Complaint (SAC), pp. 3-5.

Plaintiff appealed his second CDC 115 RVR to the third level, arguing that he posed no future threat to this country because he is not an American citizen, is subject to a deportation hold, and will be deported to Poland upon his release from prison; the appeal was denied. On May 10, 2002, plaintiff appeared for his annual review before the Unit Classification Committee (UCC), where his work group/privilege group C/C status was maintained. Plaintiff appealed his reinstatement to C/C status, after his return from re-sentencing, on January 14, 2003, whereupon he appealed, asking for dismissal of his RVRs, restoration of his A1/A status and $200.00 a day for every day of almost two years, March 8, 2001 to April 22, 2003, of having been placed on C status "inappropriately." The appeal was partially granted on August 8, 2003, at the director's level. His C status was found to have been inappropriate. Although partially granting his appeal, plaintiff's claim for money damages was denied. SAC, pp. 5-6.

Plaintiff alleges a violation of his rights under the Eighth Amendment for having been confined on C status in a small, 23-square foot space shared with another inmate for almost

---

certificate of service, but where the date is not at issue, this third alternative need not be introduced to further confuse the issue).

[3] Cal. Penal Code § 296 requires persons convicted of specified offenses to provide, inter alia, "two specimens of blood...."

two years and almost never allowed outdoor exercise. Defendants Runnels and Briddle's memos and rules did not allow for outdoor exercise for C-status inmates during most of the time at issue. This lack of exercise resulted in significant weakening/atrophying of plaintiff's muscles, bones and joints, contributed to poor circulation of his blood, heightened his blood pressure, impacted his immune system and generally contributed to a deterioration of his overall health. In addition to physical pain, plaintiff alleges that he suffered emotional distress and believes that his future health has been affected.   SAC, pp. 6-8.

At the outset of his second amended complaint, plaintiff seeks only money damages. However, in his prayer for relief, he seeks injunctive relief as well.[4]  SAC, p. 2, 9.

Motion to Dismiss

Defendants move for dismissal, pursuant to Fed. R. Civ. P. 12(b)(6), contending that plaintiff has failed to state a claim upon which relief can be granted.

*Failure to State a Claim - Legal Standard*

A complaint should not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that plaintiff cannot prove any set of facts consistent with his allegations which would entitle him to relief. NOW, Inc. v. Schiedler, 510 U.S. 249, 256, 114 S. Ct. 798, 803 (1994); Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984), citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957), Cervantes v. City of San Diego, 5 F.3d 1273, 1274-75 (9th Cir. 1993). Dismissal of the complaint, or any claim within it, "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); see also Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S.

---

[4] As plaintiff is no longer retained at C status, it is unclear what form of injunctive relief he might be seeking.

Ct. 1848, 1850 (1976), construe the pleading in the light most favorable to the party opposing the motion and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S. Ct. 1843, 1849, reh'g denied, 396 U.S. 869 (1969). The court will "'presume that general allegations embrace those specific facts that are necessary to support the claim.'" NOW, 510 U.S. at 256; 114 S. Ct. at 803, quoting Lujan v. Defenders of Wildlife, 504 U.S.555, 561, 112 S. Ct. 2130, 2137 (1992). Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972). A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984), citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).

The court may consider facts established by exhibits attached to the complaint. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). The court may disregard allegations in the complaint if they are contradicted by facts established by exhibits attached to the complaint. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). Furthermore, the court is not required to accept as true allegations that contradict facts which may be judicially noticed. Mullis v. United States Bankruptcy Ct., 828 F.2d 1385, 1388 (9th Cir. 1987), cert. denied, 486 U.S. 1040 (1988). The court need not accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir.), cert. denied, 454 U.S. 1031 (1981). The court need not accept legal conclusions "cast in the form of factual allegations." Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir.), cert. denied, 454 U.S. 1031 (1981).

A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. See Noll v. Carlson, 809 F. 2d 1446, 1448 (9th Cir. 1987).

*Motion*

Defendants contend that plaintiff has failed to state a claim because he alone was responsible for the conditions to which he was subjected. In support, defendants rely on a Seventh Circuit case, Rodriguez v. Briley, 403 F.3d 952, 953 (7th Cir. 2005), wherein an inmate refused to comply with a regulation requiring that a prisoner put some of his property in a storage container each time he left his cell (to enhance fire safety). When plaintiff therein refused to comply with the regulation, he missed, within an 18-month period, 75 showers and 300 to 350 meals. The court found that the deprivation of meals and showers was a coercive measure taken to compel the inmate's compliance, rather than punishment. Defendants therein were not liable because a plaintiff "cannot be permitted to 'engineer an Eighth Amendment violation.'" Motion to Dismiss (MTD), pp. 3-4, quoting Rodriguez, supra, at 953.

Defendants further argue that any § 1983 liability must show that they either personally participated in a deprivation of plaintiff's constitutional rights or caused the deprivation. Defendants, citing Arnold v. International Business Machines Corp., 637 F.2d 1350, 1355 (9th Cir. 1981), contend that § 1983 is violated when a person, "acting under color of the power vested in him as a government officer," is the proximate or legal cause of a citizen's rights under the federal constitution or federal law. Because plaintiff acknowledges that he refused to give a DNA sample required by state law, he was subjected to disciplinary measures brought on by his own misconduct. Thus, so defendants maintain, his own refusals were the sole proximate cause of the restrictions placed on his outdoor exercise access. MTD, p. 4.

*Opposition*

Plaintiff does not dispute that Cal. Penal Code § 296 requires DNA testing of state prisoners and that while he refused, he did so by challenging the legality of the statute in court. Since plaintiff was deemed a program failure as a result of his refusal, he was, inter alia, restricted as to outdoor exercise for extended periods. Plaintiff quotes from the director's level

\\\\\

appeal decision[5] wherein it was found that while it was appropriate for plaintiff to have been subjected to disciplinary action for failure to comply with the requirement to provide DNA samples, and that if such action was ineffective, reasonable force could have been used to obtain the samples, his placement on C status had been inappropriate because no provision provided for it for plaintiff's refusal to submit the required samples. It was ordered that plaintiff have his prior designation as a program failure be rescinded as well as rescinding the duration of his C status placement.[6] At the outset, the decision also notes that plaintiff has since complied with Cal. Penal Code § 196 and is no longer on C status. Plaintiff maintains that, notwithstanding the rescission order, he had been subjected to nearly two years of 24-hour-a-day confinement in a concrete cage without outdoor exercise, which had "exacted its toll on his health and well-being." Opposition, p. 2.

*Discussion*

The court observes that plaintiff's assertion that his refusal to comply with Cal. Penal Code § 296 was by challenging the legality of the statute in court is a confusing and contradictory assertion. In the first place, within his second amended complaint, he states that the reason he had refused to comply was because he was waiting until such time as his appeal was complete and his conviction was final, not that he was challenging the legality of the statute requiring the DNA sample; in the second place, challenging the statute in court is not a refusal to comply; the refusal to comply occurred when he did not abide by the provisions of the statute;

---

[5] Although plaintiff did not include this decision as an exhibit to his second amended complaint, and, in fact, did not include it with his opposition, because plaintiff did include it as an exhibit, Exhibit J, an earlier incarnation of this action (the since dismissed first amended complaint), the court take judicial notice of a copy of the August 8, 2003, director's level decision having been previously submitted in this case and will deem the exhibit part of the second amended complaint. (Judicial notice may be taken of court records. Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n.1 (N.D. Cal. 1978), aff'd, 645 F.2d 699 (9th Cir.), cert. denied, 454 U.S. 1126 (1981)).

[6] The portion of the direction requiring the duration of a placement that has already occurred to be rescinded appears to defy the limits of the time and space continuum.

and, finally, whether or not plaintiff challenged the statute's legality is irrelevant to whether or not he was required to abide by it. Also, while the director's level decision upon which he relies in opposition provides some evidence for finding that plaintiff's placement on C status was wrongful, it implicates due process, rather than the Eighth Amendment, on the face of it.

Nevertheless, defendants' argument that plaintiff is somehow responsible for being allowed almost no access to outdoor exercise for nearly a two-year period because he brought disciplinary restrictions upon himself on by his own conduct (which restrictions apparently arose by placement on a custody status that, according to the CDC (or CDCR) director, was inappropriately imposed) does not absolve defendants of their responsibility to comply with the standards of the Eighth Amendment. To the extent plaintiff alleges that being confined to a relatively small space with virtually no outside exercise, i.e., 24-hours a day, for nearly two years is a violation of the Eighth Amendment, his claim, on the face of it, is colorable.

Although a temporary denial of exercise does not per se constitute an Eighth Amendment violation, denial of all outdoor exercise for an extended period may. May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (temporary deprivation of 21 days without outdoor exercise with no medical effects not a substantial deprivation); Hayward v. Procunier, 629 F.2d 599, 603 (9th Cir. 1980) (30-day emergency lockdown period was an unusual circumstance justifying denial of outdoor exercise); see also LeMaire v. Maass, 12 F.3d 1444, 1457-1458 (9th Cir. 1993) (while exercise is "one of the basic human necessities protected by the Eighth Amendment," where restriction from outdoor exercise arose from inmate's abuse of the privilege and posing a security risk, plaintiff's Eighth Amendment claim for deprivation thereof failed); but see, Spain v. Procunier, 600 F.2d 189, 199-200 (9th Cir. 1979) (upholding district court decision that inmates confined with almost total lack of outdoor exercise for period of years was cruel and unusual punishment, and requiring they be allowed one hour of outdoor exercise, five days a week, absent poor weather, unusual circumstances); see also, Keenan v. Hall, 83 F.3d 1083, 1090 (9th Cir. 1996) (defendants not entitled to summary judgment where plaintiff

produced evidence showing deprivation of outdoor exercise for six-month period in administrative segregation).  The Ninth Circuit has clarified the requisite elements:

> "An Eighth Amendment claim that a prison official has deprived inmates of humane conditions must meet two requirements, one objective and one subjective. Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir.1995). "Under the objective requirement, the prison official's acts or omissions must deprive an inmate of the minimal civilized measure of life's necessities. The subjective requirement, relating to the defendant's state of mind, requires deliberate indifference." Id. (citations omitted).

Lopez v. Smith, 203 F.3d 1122, 1132-1133 (9th Cir. 2000).

In Allen v. Sakai, 48 F.3d 1082, 1086-1088 (9th Cir. 1994),[7] the Ninth Circuit affirmed denial of summary judgment for defendants on plaintiff's Eighth Amendment claim arising from six weeks of confinement with only 45 minutes of exercise per week, finding that plaintiff met the objective requirement.  In Lopez, the Ninth Circuit found that plaintiff's claim that he was denied all outdoor exercise for six and a half weeks met the objective requirement for an Eighth Amendment claim.  1132-1133.  The Lopez court noted that:

> The clear implication of May is that temporary denials of outdoor exercise must have adverse medical effects to meet the Eighth Amendment test, while long-term deprivations are substantial regardless of effects.

Lopez v. Smith, 203 F.3d at 1133 n. 15 (see May v. Baldwin, supra).

Here plaintiff has claimed both long-term deprivation as well as adverse medical effects.  Whether or not plaintiff's claims may survive a motion for summary judgment is another question, but the court finds that his allegations under the Eighth Amendment do withstand defendants' dismissal motion.

\\\\\

---

[7] Although the Federal Reporter indicates that Allen v. Sakai was amended in March of 1995, the year cited in Lopez, supra, for the decision, the Federal Reporter nevertheless directs that the decision be cited as rendered in 1994; Westlaw also provides 1994 as the date of the decision.

Accordingly, IT IS HEREBY RECOMMENDED that defendants' motion to dismiss, filed on October 11, 2005, be denied and defendants be directed to file an answer, within thirty days of adoption of these findings and recommendations, should that occur.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 8/23/06

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:009
musz0082.mtd